**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Janna Messinger, | No. CV-16-02529-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Janna Messinger seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security which denied her disability insurance benefits. Because the decision of the Administrative Law Judge ("ALJ") is based on legal error, the Commissioner's decision will be vacated and the matter remanded for further administrative proceedings.

**I.   Background.**

Plaintiff is a 54 year-old female who previously worked as a Forrest Technician and Maintenance Worker. On April 11, 2013, Plaintiff applied for disability insurance benefits, alleging disability beginning January 21, 2012. On June 23, 2015, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified. On July 9, 2015, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.

## II. Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.*

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 2012, and that she has not engaged in substantial gainful activity since January 21, 2011. At step two, the ALJ found that Plaintiff has the following severe impairments: "degenerative disc disease (DDD), degenerative joint disease, and arthritis (20 CFR 404.1520(c))." A.R. 14. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. A.R. 15. At step four, the ALJ found that Plaintiff has the RFC to perform "light work as defined in 20 CFR 404.1567(b), sitting, standing or walking six hours each out of an eight hour day, with additional limitations. The claimant is additionally limited to climbing, kneeling, stooping, balance, crouching, or crawling occasionally." A.R. 16. The ALJ further found that Plaintiff was unable to perform any of her past relevant work. At step five, the ALJ concluded that, considering

Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

**IV.     Analysis.**

Plaintiff argues the ALJ's decision is defective for two reasons: (1) the ALJ erred in giving Dr. Oscar Andrade's assessment reduced weight, and (2) the ALJ erred in her analysis of Plaintiff's credibility.

**A.     Weighing of Medical Source Evidence.**

**1.     Legal Standard.**

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). But the Commissioner generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the claimant's impairments, what the claimant can do, and the claimant's physical or mental restrictions. § 404.1527(a)(2), (c).

In determining how much deference to give a physician's medical opinion, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence).

If a treating or examining physician's medical opinion is not contradicted by another doctor, the opinion can be rejected only for clear and convincing reasons. *Lester*, 81 F.3d at 830 (citation omitted). Under this standard, the ALJ may reject a treating or examining physician's opinion if it is "conclusory, brief, and unsupported by the record

- 4 -

as a whole[] or by objective medical findings," *Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004), or if there are significant discrepancies between the physician's opinion and her clinical records, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When a treating or examining physician's opinion is contradicted by another doctor, it can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citation omitted). To satisfy this requirement, the ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). Under either standard, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### 2. Dr. Andrade.

During 2012, Dr. Andrade examined Plaintiff five times: on July 11 (A.R. 309-11), August 8 (A.R. 312-14), August 28 (A.R. 315-16), October 22 (A.R. 317-19), and December 17 (A.R. 320-22). Doc. 15 at 9. Dr. Andrade's treatment notes are in the record, and consistently note that Plaintiff's medications had provided adequate pain relief with no side effects. A.R. 310, 313, 316, 318, 321. The treatment notes also indicate that Plaintiff experienced a limp in her left leg, tenderness in her lower cervical area, her lumbar levels, and her right thumb. A.R. 20, 309-22.

On October 1, 2013, Dr. Mikhail Bargan provided a non-consultative evaluation opining that Plaintiff has the following limitations: Plaintiff can lift 20 pounds occasionally and 10 pounds frequently, sit and stand/walk for six hours each in an eight hour work day, and climb, kneel, crouch, and crawl occasionally. A.R. 124-25. The RFC ultimately adopted by the ALJ is consistent with the recommended limitations provided by Dr. Bargan in his state agency evaluation. *See* A.R. 16, 124-25. In providing his recommendation, Dr. Bargan considered Dr. Menandez's examination

findings, Dr. Andrade's treatment notes indicating improvement in functioning with medication, and the normal sensory testing in Plaintiff's hands. A.R. 125.

On June 4, 2015, more than two years after Plaintiff's final treatment by Dr. Andrade during the period at issue, Dr. Andrade completed a "Medical Assessment of Ability to Do Work Related to Physical Activities" form on Plaintiff's behalf. A.R. 19, 419-21. The checkbox form states that on or before December 31, 2012, Plaintiff's conditions would limit her to occasionally lifting and carrying 20 pounds, frequently carrying or lifting less than 10 pounds, standing or walking less than two hours in an eight hour day, and sitting for no more than one hour per eight hour day. A.R. 419. Dr. Andrade also checked boxes indicating that Plaintiff should never climb, balance, stoop, kneel, crouch, or crawl, and may only occasionally use her hands for handling, fine manipulation, feeling, or reaching. A.R. 420. Dr. Andrade opined that Plaintiff has the following environmental limitations: heights, moving machinery, temperature extremes, chemicals, dust, and noise. A.R. 421. In an accompanying form titled "Pain Functional Capacity (RFC) Questionnaire," Dr. Andrade indicated that Plaintiff, on or before December 31, 2012, had severe pain sufficient to constantly interfere with her attention and concentration, and to cause her to experience deficiencies of persistence or pace resulting in failure to complete tasks in a timely manner. A.R. 422-23.

Because Dr. Andrade's medical opinion was contradicted by the opinion of Dr. Bargan (A.R. 124-25), the ALJ could discount Dr. Andrade's opinion for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31. The ALJ gave the following reasons for assigning Dr. Andrade's June 2015 opinions reduced weight: (1) "Dr. Andrade saw [Plaintiff] for only a few months prior to the alleged date of onset," (2) "the evidence of record, including Dr. Andrade's treatment notes[,] do not support the limitations indicated in his assessment," (3) Dr. Andrade's "assessment was issued after the claimant's date of last insured," and (4) "there is no indication that any treating provider, including Dr. Andrade[,] had imposed any limitations on Plaintiff during the period at issue." A.R. 20. The Court must determine whether the ALJ's

reasons for rejecting Dr. Andrade's opinion are legitimate and specific. *Cotton*, 799 F.2d at 1408.

### a. The ALJ's First Reason.

The ALJ observed that Dr. Andrade had only a brief treating relationship with Plaintiff during the time period at issue. A.R. 20. The duration of the treatment relationship and the frequency and nature of the patient contact is relevant in weighing medical opinion evidence. *Benton v. Barnhart*, 331 F.3d 1030, 1038-39 (9th Cir. 2003). In this instance, Dr. Andrade met with and examined Plaintiff on five occasions during the relevant period. A.R. 309-22. Additionally, Dr. Andrade completed his checkbox form opinion more than two years after the date in question. A.R. 419-23; *see also Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (affirming an ALJ's rejection of a physician's opinion because the opinion was provided in a "check-off report[]" and did not contain any explanation of the basis of the physician's conclusion). The Court finds the ALJ's first reason to be a specific and legitimate reason for rejecting Dr. Andrade's opinion.

### b. The ALJ's Second Reason.

The ALJ found that "the evidence of record, including Dr. Andrade's treatment notes[,] do not support the limitations indicated in his assessment." A.R. 20. Plaintiff argues that Dr. Andrade noted significant or severe pain reported by Plaintiff at each exam during the time period in question. Doc. 21 at 2-3. Dr. Andrade's exams "found a left leg limp, tenderness in the lower cervical and lumbar reagion[,]" and swelling in the right thumb. *Id.* During the time in question, Dr. Andrade refilled Plaintiff's narcotic medications at each exam, discussed alternative treatment options with Plaintiff, and referred Plaintiff to a neurosurgeon for a surgical consultation. A.R. 309-22.

The ALJ does not explain her reasoning beyond her conclusory assertion that Dr. Andrade's opinion is not supported by evidence in the record. Accordingly, the Court finds the ALJ's second reason is not specific, and thus may not be used to justify reducing the weight given to Dr. Andrade's opinion.

### c. The ALJ's Third Reason.

The ALJ found that Dr. Andrade's opinion was completed more than two and a half years after Plaintiff's date of last insured. A.R. 419-23. Plaintiff argues that this reason is not legitimate because Dr. Andrade specifically addresses the time frame at issue in his opinion. Doc. 15 at 11-13. The Commissioner did not to address this issue in his response. *See* Doc. 20. The Court finds no Ninth Circuit case law prohibiting consideration of a physician's medical opinion on a claimant's functional ability during the relevant time period – prior to the claimant's date of last insured – merely because the opinion was recorded after that time period had lapsed. Accordingly, the Court finds that the ALJ's third reason is not specific and legitimate.[1]

### d. The ALJ's Fourth Reason.

The ALJ found "no indication that any treating provider, including Dr. Andrade[,] had imposed any limitations on Plaintiff during the period at issue." A.R. 20. Plaintiff argues that her activity level had not increased since 2011, when she began resting six to eight hours out of the day. Doc. 21 at 4; A.R. 45. Plaintiff asserts that "since there is no indication that her activity level increased, it would be ridiculous for Dr. Andrade to give specific limitations to a patient that is doing so little during the day." Doc. 21 at 4.

When evaluating a physician's opinion, an ALJ may consider inconsistencies between the physician's treatment and the physician's recommended limitations. The fact that no physician, including Dr. Andrade, imposed any limitation on Plaintiff during the period at issue is inconsistent with Dr. Andrade's reported limitations. The Court finds this to be a specific and legitimate reason for questioning Dr. Andrade's opinion.

Because the ALJ gave specific and legitimate reasons for discounting Dr. Andrade's opinion, the ALJ did not commit legal error.

---

[1] The Court is not saying that such a delay is irrelevant when conducting an evaluation of what weight to give one medical opinion in conflict with another. Rather, the Court finds that the fact Dr. Andrade did not complete his checkbox opinion until more than two years after the time period in which he developed the opinion is not, without more explanation, a specific and legitimate reason for discounting an opinion.

## B. The ALJ Erred in Evaluating Plaintiff's Credibility.

In evaluating the claimant's symptom testimony, ALJs must engage in a two-step analysis. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). If the claimant presents such evidence, the ALJ proceeds to consider all of the available evidence, including the claimant's history, the signs and laboratory findings, and statements from the claimant, her doctors, and other persons, to determine the persistence and intensity of these symptoms. § 404.1529(c)(1). If there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons that are supported by substantial evidence. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Plaintiff testified that she can read a newspaper, make change, dress herself without help, do chores at her leisure, watch television in bed, and drive for up to 20 minutes. A.R. 61-63. She cannot do simple adding and subtracting, does not have a bank account, seldom cooks, and occasionally helps with laundry. A.R. 64. Plaintiff does not wash dishes, mop, grocery shop, garden, exercise, do yardwork, or use a computer. *Id.* Plaintiff has maintained this activity level since 2012. A.R. 65.

Plaintiff also testified she has trouble sleeping. A.R 62. She is only able to sleep in a recliner, and even then only sleeps for four hours at a time. *Id.* Plaintiff testified that she has constant achiness in her bones, neck pain, and hip pain. A.R. 67-68. She described a pain level of 8 out of 10, even with medication. A.R. 68. Plaintiff claims that after her cervical fusion her pain became worse. A.R. 69. She now has increased headaches, pain when turning her head while driving, stabbing pain while raising her arms, and pain while moving and touching her head. *Id.* In 2012, Plaintiff would lay down whenever she was experiencing pain, which was typically about six hours per day. A.R. 71. Plaintiff testified that on a typical day in 2012, she would wake up and watch television while reclining or in bed for approximately 2-3 hours, start doing laundry, then lay down for another three hours with her feet elevated. A.R. 74.

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment. In other words, the ALJ found Plaintiff's statements not credible to the extent she claims she is unable to perform in a competitive work environment.

No part of the ALJ's decision expressly states a reason for discounting Plaintiff's symptom testimony. Instead, the ALJ states the following in support of her RFC finding:

> [T]he above residual functional capacity is supported by [Plaintiff's] testimony regarding [her] fairly active daily activities, . . . the conservative treatment which [Plaintiff] received during that time [in question], the evidence that [Plaintiff's] impairments were stable, and she reported her pain was under control without side effects, and the relative lack of any treatment of import during that time.

A.R. 20. To the extent the ALJ relied on these reasons to discount Plaintiff's symptom testimony, the Court finds them neither clear nor convincing.

### 1. Daily Activities.

An ALJ may reject a claimant's symptom testimony if it is inconsistent with the claimant's daily activities. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). But "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. Thus, an ALJ may use a claimant's daily activities to discredit symptom testimony only if the claimant "spend[s] a *substantial part* of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (emphasis added); *Reddick*, 157 F.3d at 722 ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").

The ALJ found that "the above [RFC] is supported by [Plaintiff's] testimony regarding fairly active daily activities[.]" A.R. 20. The ALJ explained:

> [T]he claimant has indicated that she takes care of her personal needs without needing reminders, albeit with some difficulty and adjustments such as requiring a longer period of time to shower. She has stated that she prepares her own meals, although she prepares the "easiest and quickest" simple meals. The claimant has indicated that she is able to clean and do housework, taking breaks when she gets tired. She has stated that she tries to go out every other day, riding in a car, and she is able to go out alone. She has indicated that she drives, but "only if I have to" because she can't turn her head to look at blind spots (Exh. 4E/4). The claimant has stated that she goes shopping in stores for food and other items, although she makes it "as quick as she can" usually spending approximately fifteen minutes at the store. She has indicated that she is able to pay bills, count change, handle a checking and savings account as well as money orders and her ability to handle money has not changed since her illness began. She has indicated that she does not have any problems getting along with family, friends, or others and she gets along well with authority figures (Exh. 4E/6).

A.R. 17. The ALJ did not find that Plaintiff spent a substantial part of her day engaged in these activities. *See Orn*, 495 F.3d at 639. Moreover, she did not explain how these activities are inconsistent with Plaintiff's claimed limitations. *See Burch*, 400 F.3d at 681. In fact, the ALJ provided no explanation as to why these daily activities detracted from Plaintiff's credibility, providing only the above stated conclusion that "the above [RFC] is supported by Plaintiff's testimony regarding fairly active daily activities[.]" A.R. 20.

Plaintiff's 2013 Function Report, upon which the ALJ relied, actually documents significant limitations consistent with Plaintiff's symptom testimony. *See* A.R. 20, 215-24. For example, the Function Report acknowledges that Plaintiff completes chores, but also states that she takes many breaks throughout the day to complete a single chore. A.R. 216, 218. Indeed, the ALJ acknowledges that Plaintiff "mainly lies in bed watching television for six or seven hours" a day, and that although she has a driver's license and is able to drive, "she has problems driving even to Payson which is twenty minutes away." A.R. 17. Further, the ALJ noted that Plaintiff "does not go out socially" and that "her activities during 2012 were the same as they are today." *Id.* Because the ALJ provides no explanation of how these daily activities are inconsistent with her symptom testimony,

- 11 -

or why they support a finding that Plaintiff's testimony should be discredited, the Court concludes that Plaintiff's daily activities do not constitute a clear and convincing reason for discounting Plaintiff's symptom testimony.

### 2. Conservative Treatment and Stable Impairments.

In some circumstances, "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Here, the ALJ states, without explanation, that "the conservative treatment which [Plaintiff] received during the time, the evidence that her impairments were stable, and that she reported her pain was under control without side effects, and the relative lack of any treatment of import during that time are also supportive of the above [RFC]." A.R. 20.

The record does not support the ALJ's conclusion. In her decision, the ALJ acknowledges that Plaintiff "was receiving treatment with kenalog injection, NSAIDs with continued monitoring and clinical review every two to three months." A.R. 18. The Ninth Circuit has rejected arguments that "epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment." *Garrison*, 759 F.3d at 1015 n.20. The ALJ also acknowledges that "Dr. Andrade suggested to [Plaintiff] that she see [] her neurosurgeon[,]" and that "[Plaintiff] was given a referral to see Dr. Menendez, a neurosurgeon in August of 2012." A.R. 19. The ALJ then states that "the record shows that [Plaintiff] had not been seen by this or any other neurosurgeon by December 2012." *Id.* In fact, Plaintiff saw Dr. Menendez on December 4, 2012. A.R. 299-302. Following his surgical consultation, Dr. Menendez commented:

> Patient suffers from myelopathy and that I can see that despite her excellent cervical decompression there is an area of myelomalacia within the operative site. This is the reason why she has all of her symptoms, but I do not think that anything can be done to make it better. Unfortunately she had very unrealistic expectations about surgery, and I am not sure that her previous surgeon was very clear as to what to expect afterwards. She is understandably upset right now, however at least feels some relief in understanding what [i]s happening.

A.R. 302. Dr. Menendez's comments suggest that Plaintiff sought out less conservative treatments than medication, but those options were inappropriate for her condition.

The ALJ also notes throughout her opinion that medication provided Plaintiff with adequate pain relief without side effects. A.R. 19-20. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Commissioner of Social Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). But the record does not show that Plaintiff's pain was effectively controlled by medication. At both her July 11 and August 8, 2012 visits with Dr. Andrade, the record shows Plaintiff was experiencing breakthrough pain despite her medication. A.R. 310, 313 ("[Plaintiff] is having significant breakthrough pain and has not had any relief from current dose of narcotic analgesics."). In subsequent visits with Dr. Andrade, Plaintiff was advised "of the possibility of therapeutic injections for pain control." A.R. 316. These facts in the record indicate that Plaintiff's pain was not under control with medication. Her pain was sufficient to prompt her pursuit of additional surgical and medicinal remedies over the time period in question.

In short, the Court concludes that the ALJ did not provide specific, clear, and convincing reasons, supported by substantial evidence, for discounting Plaintiff's testimony. *Vasquez*, 572 F.3d at 591.

**C.  Remand.**

An action should be remanded for an award of benefits when the following three factors are satisfied: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d at 1020 (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1202 (9th Cir. 2008), *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007), *Orn*, 495 F.3d at 640, *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004), and *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.

1996)). There is "flexibility" which allows "courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1020.

In this instance, evaluation of the record as a whole creates serious doubt that the claimant is, in fact, disabled. As the Commissioner argues "[f]irst, [Plaintiff's] record shows a prior ALJ finding of not disabled that became final in February 2013, with no subsequent court challenge," and "[u]nder Ninth Circuit law, this created a presumption of continuing non-disability unless [Plaintiff] can show changed circumstances." Doc. 20 at 13. Accordingly, "[t]he ALJ should have considered whether [Plaintiff's] circumstances had changed sufficiently to rebut this presumption." *Id.*

Second, Plaintiff's evidence prior to July 2012 is sparse, and the sole medical opinion supporting a finding of disability – the June 2015 opinion of Dr. Andrade – states only that Plaintiff's limitation existed "on or before December 31, 2012." *Id.*; A.R. 421. This does not necessarily mean that Plaintiff's limitations existed for the entire time period at issue.

Third, Plaintiff applied only for disability insurance benefits, and her insured status lapsed in 2012. If Plaintiff is seeking to be awarded continuous disability benefits, it is Plaintiff's duty to establish that her "disability has existed continuously since a date on or before the date that [her] insurance coverage lapsed." *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1462 (9th Cir. 1995). In her decision, the ALJ only addressed the time period between January and December 2012, and not from December 2012 to the present. Thus, to the extent Plaintiff is seeking continuous disability benefits, remanding for payment of those benefits would be inappropriate because Plaintiff has not established that she has been continuously disabled since a date on or before her insurance lapsed. Accordingly, the Court finds that the ALJ's decision must be vacated and remanded for further proceedings.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated** and this case is **remanded** for further proceedings consistent with this opinion. The Clerk shall enter judgment accordingly and **terminate** this case.

Dated this 31st day of May, 2017.

_____
David G. Campbell
United States District Judge